EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>        Recurrido<br><br><br>               v.<br><br><br>Zulma Díaz de León<br>        Peticionaria | Certiorari<br><br>2009 TSPR 165<br><br>177 DPR _____ |

Número del Caso: CC-2008-4


Fecha: 16 de septiembre de 2009


Tribunal de Apelaciones:

        Región Judicial de Humacao Panel VI

Juez Ponente:
                Hon. Germán J. Brau Ramírez


Abogados de la Parte Peticionaria:

                Lcdo. José A. Valle Brenes
                Lcdo. Alex O. Rosa Ambert

Oficina del Procurador General:

                Lcda. Zaira Z. Girón Anadon
                Subprocurador General



Materia: Procedimiento criminal Recurso de Certiorari para revisar determinación de causa probable para arrestar o acusar

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico
        Recurrido

        v.

                                CC-2008-004

    Zulma Díaz de León
        Peticionaria




                        RESOLUCIÓN

    En San Juan, Puerto Rico, a 28 de octubre de 2009.


        A la moción de reconsideración del Ministerio Público, no ha lugar. El Ministerio Público, representado por la Oficina de la Procuradora General, nos solicita que reconsideremos nuestro dictamen en Pueblo v. Díaz De León, Opinión de 16 de septiembre de 2009, 2009 T.S.P.R. 142, 2009 J.T.S. 145, 176 D.P.R. ___ (2009). Allí le concedimos al Ministerio Público la oportunidad de presentar nuevamente en una vista preliminar en alzada, todos los cargos instados contra la acusada-recurrida, Zulma Díaz De León. En esa ocasión, el Ministerio Público tendrá la oportunidad de que se encuentre causa probable para acusar a la recurrida Díaz De León por los cargos imputados así como por cualesquiera otros que surjan de la prueba. Por consiguiente, el Ministerio Público podrá solicitar que se encauce a Díaz De León no sólo por los cargos de asesinato en su modalidad de cooperador sino también por otros, incluyendo el delito de encubrimiento, cargo por el cual el Tribunal de Apelaciones halló causa probable para acusar a la recurrida sin tener autoridad para hacerlo. Véase, Pueblo v. Sustache

<u>Sustache</u>, Opinión de 9 de julio de 2009, 2009 T.S.P.R. 119, 2009 J.T.S. 122, 176 D.P.R. ___ (2009).

Así pues, nos encontramos ante la situación insólita en que un litigante solicita la reconsideración de un dictamen judicial que le favorece.

Aunque eso debería bastar para denegar la moción de reconsideración, atendemos los señalamientos de la Procuradora General para justificar su moción. El Ministerio Público señala los problemas que a su juicio le presenta nuestra decisión. Tales problemas son ficticios.

En primer lugar, el Ministerio Público hace suyos los planteamientos de la disidencia en cuanto a la naturaleza transmutada del recurso de *certiorari* en esta jurisdicción, que a su juicio "se aleja del derecho anglosajón...".[1] Moción de reconsideración, pág. 2. Aun así, admite "que se trata de una cuestión sobre la que caben opiniones encontradas." <u>Ibíd</u>.

Al respecto, reiteramos la visión que prevaleció en este caso, ante la naturaleza limitada del *certiorari*. Se trata de un recurso extraordinario que no está disponible cuando existe un remedio más adecuado en derecho. <u>Pueblo v. Díaz De León</u>, <u>supra</u>; <u>Pueblo v. Tribunal Superior</u>, 81 D.P.R. 763, 767 (1960). Valga aclarar que los desarrollos más recientes en las leyes y reglas no han abandonado esa

---

[1] Presumimos que la Subprocuradora General que suscribe la moción se refiere al derecho de origen inglés o al de los países angloparlantes. Los anglosajones eran varios pueblos germanos –los jutos, los anglos y los sajones– que a partir del Siglo V invadieron y conquistaron Inglaterra en el sur de Britania. A estos pueblos en general se les denominó anglosajones. Fueron dominados por los vikingos daneses en el Siglo IX. Como resultado, la cultura anglosajona desapareció y la lengua vikinga transformó el antiguo idioma inglés al inglés medieval. El dominio danés sobre Inglaterra desapareció en el Siglo XI, después que el Rey Harald II de Dinamarca se desentendió de las Islas Británicas. Con la desaparición de la línea de sucesión danesa, se reanudó la línea real de Wessex y comenzó la era feudal en una Inglaterra independiente. Fue entonces que el Rey Edward trasladó la Corte real a Londres, se rodeó de consejeros normandos y construyó la Abadía de Westminster, símbolos de la Inglaterra que conocemos hoy. Así pues, referirse al derecho de origen inglés como anglosajón equivale a llamarle taíno al derecho puertorriqueño contemporáneo.

filosofía; por el contrario, la han reafirmado. Por ejemplo, lejos de liberalizar el recurso de *certiorari*, la Asamblea Legislativa impuso un término para presentarlo, mediante enmienda a la Regla 53.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 53.1. Más aún, las propuestas Reglas de Procedimiento Civil de 2009, pendientes de aprobación legislativa, no sólo mantienen dichos plazos para la presentación del *certiorari* sino que contemplan una limitación a la utilización del recurso en ciertas etapas interlocutorias en los casos civiles. Véase propuesta Regla 52.1.

Como segundo argumento, el Ministerio Público expone la situación hipotética en que un magistrado no determine causa probable en la vista preliminar inicial por una cuestión de derecho. Alega el Ministerio Público que si en la vista preliminar en alzada el nuevo magistrado encuentra no causa sin expresar fundamentos o por insuficiencia de prueba, el fiscal no tiene remedio alguno. Lo que plantea el Ministerio Público no es consecuencia de nuestro dictamen. La situación es la misma bajo la norma que siempre ha imperado.

Por un lado, si el tribunal no expresa fundamentos, el fiscal puede tratar de demostrar que la determinación se basó en una cuestión de derecho, lo que dejaría disponible el *certiorari* para revisar la decisión. De hecho, el Tribunal de Apelaciones puede ordenarle al magistrado que fundamente su dictamen. Regla 83.1 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B R. 83.1; Pueblo v. Pérez, 159 D.P.R. 554 (2003). En cambio, si se produce una determinación de no causa probable por insuficiencia de prueba, el *certiorari* nunca ha estado disponible, antes ni después de nuestra decisión en este caso. El *certiorari* nunca ha estado disponible para revisar la determinación de no causa si no hay prueba para arrestar o acusar. Pueblo v. Cruz Justiniano, 116 D.P.R. 28 (1984).

Por otro lado, si en la vista preliminar inicial se determina no causa probable por una cuestión de derecho pero en la vista en alzada se determina causa probable, la determinación inicial queda sin efecto. Por ello, no hay daño ni error que haya que remediar.

Ahora bien, si lo que se implica es que en la vista preliminar en alzada, el magistrado va a determinar que no hay causa probable por el fundamento de insuficiencia de la prueba a sabiendas de que ésta es suficiente, para evitar que el Ministerio Público pueda recurrir por *certiorari*, estaríamos hablando entonces de una conducta inapropiada que obviamente no puede guiar nuestros precedentes. No podemos presumir que los magistrados que atienden las vistas preliminares en alzada son mendaces o

marrulleros,[2] características que describirían al juez que falsea el fundamento de su dictamen para impedir que le revisen en un foro de superior jerarquía. Por el contrario, partimos de la premisa de que "[d]ifícilmente exista en el mundo una judicatura con mejor tradición de honestidad, pulcritud e imparcialidad que la nuestra". Feliciano Rosado v. Matos, Jr., 110 D.P.R. 550, 579 (1981) (Opinión disidente del Juez Asociado señor Díaz Cruz).

En conclusión, nuestra Opinión en Pueblo v. Díaz De León, supra, le concede al Ministerio Público en este caso una oportunidad más amplia para establecer causa probable para acusar por cualquier delito que surja de la prueba, sin verse limitado por la determinación anterior como ocurre en el recurso de certiorari. Véase, Pueblo v. Sustache Sustache, supra. Además, sigue disponible para la fiscalía el recurso de certiorari, ante el Tribunal de Apelaciones en primer término y luego, de ser necesario, ante este Tribunal, para revisar cualquier error de derecho que motivara una determinación de ausencia de causa probable. Las situaciones imaginarias e inexistentes que se aducen en la moción de reconsideración no alteran esa realidad.

No se le ha quitado ningún mecanismo procesal al Ministerio Público. Mucho menos se le han impuesto trabas o cargas que redunden en que los criminales queden impunes. Además, los problemas imaginarios que invoca el Ministerio Público no son producto de nuestra decisión.

Por esa razón, procede denegar la moción de reconsideración.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió un Voto Disidente al cual se unieron las Juezas Asociadas señoras Fiol Matta y Rodríguez Rodríguez.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

---

[2] Dícese del que utiliza una "[a]stucia tramposa o de mala intención". Diccionario de la Real Academia Española, 22ª ed., Madrid, 2005.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       Vs.                      CC-2008-004

Zulma Díaz de León

    Peticionaria

Voto Disidente emitido por el Juez Presidente SEÑOR HERNÁNDEZ DENTON al cual se unen las Juezas Asociadas señoras FIOL MATTA y RODRÍGUEZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 28 de octubre de 2009.

Mediante la moción de reconsideración presentada en el caso de autos, la Procuradora General nos solicita que dejemos sin efecto la decisión emitida por este Tribunal mediante Opinión y Sentencia el pasado 16 de septiembre de 2009, Pueblo v. Díaz de León, 2009 T.S.P.R. 142. En aquella ocasión nos vimos obligados a disentir por entender que la norma sobre la disponibilidad del recurso de *certiorari* adoptada por la mayoría se aparta de la normativa que este Tribunal desarrolló y que estuvo vigente en Puerto Rico por más de medio siglo. Expresamos, además, nuestra preocupación con los efectos nocivos

que tendrá la nueva norma sobre la capacidad del Estado para procesar a las personas imputadas con delitos. Véase Pueblo v. Díaz de León, *supra*, (Op. Disidente). En virtud de que en el día de hoy la mayoría deniega la moción de reconsideración de la Procuradora General, nuevamente disentimos.

En su muy bien fundamentado escrito, la Procuradora General aduce que el problema del nuevo criterio adoptado por el Tribunal radica en que, contrario a lo que asegura la mayoría, la vista preliminar en alzada no es un remedio adecuado para revisar una determinación de no causa probable en la vista original. En este sentido, argumenta que si el magistrado determina no causa en la vista original a base de alguna cuestión de derecho, como por ejemplo el alcance de alguna disposición del Código Penal que no haya sido interpretada aún por este Tribunal, esa decisión nunca se revisaría si en la vista en alzada, que es una vista nueva y distinta, se determina no causa por una cuestión de hecho, como por ejemplo, la suficiencia de la prueba. En ese caso, debido a que las determinaciones de no causa por cuestiones de hecho no son revisables, se quedaría sin resolver el asunto de derecho que fundamentó la determinación de no causa en la vista original. Ello privaría al Estado de una oportunidad vital para, no sólo revisar las decisiones basadas en cuestiones de derecho, sino lograr procesar efectivamente a aquellos que infrinjan la ley. Esta segunda consecuencia, arguye la

Procuradora General, tiene a su vez el potencial efecto de permitir que innumerables crímenes serios resulten impunes.

Por tales razones, la Procuradora General expone que el Tribunal debió concentrarse en determinar cuál sería remedio adecuado en ley para revisar la determinación de no causa en la vista original, no en la procedencia del recurso de *certiorari* en éstos casos. En apoyo de su argumento, la Procuradora General ilustra el razonamiento del Tribunal con un silogismo. A tales efectos denomina como premisa mayor la aseveración "el *certiorari* sólo procede cuando no hay otro remedio adecuado en ley" y como premisa menor que "ante una determinación de no causa probable en la vista original, el fiscal siempre tiene un remedio adecuado en la vista en alzada". La conclusión forzosa de dichas premisas, que fue la que en efecto adopta este Tribunal, consiste, en palabras de la Procuradora General, en que "no procede el *certiorari* para revisar una determinación de no causa probable en la vista original." Según la Procuradora General, el verdadero problema radica en la premisa menor –en qué es un remedio adecuado para revisar una determinación de no causa en la vista original– y no en la premisa mayor, es decir, en cuándo procede un *certiorari*.

Coincidimos plenamente con los argumentos de la Procuradora General y nos reiteramos en que la vista preliminar en alzada no es el remedio adecuado para

revisar una determinación de no causa basada en una cuestión de estricto derecho. No obstante, más allá de reafirmar lo que expusimos anteriormente, en el día de hoy disentimos para recalcar que la decisión de la mayoría no sólo reduce significativamente la probabilidad de que cuestiones de derecho importantes sean revisadas en los foros apelativos, sino que también limita sustancial e irrazonablemente la capacidad del Estado para procesar a aquellos que violen la ley.

A tales efectos, en la Opinión disidente que emitimos anteriormente en este caso, expresamos que la nueva norma establecida por la mayoría "le quita al Ministerio Público una herramienta de acceso directo a los foros apelativos para cuestionar los errores de derecho que se hayan cometido en una determinación de no causa probable en la vista preliminar". Pueblo v. Díaz de León, *supra*, (Op. Disidente). Señalamos también que mediante la decisión de la mayoría "se le impone una carga onerosa al Estado para llevar los casos ante los tribunales del país." *Íd*. Por último, en esa ocasión apuntamos al hecho de que esta carga se le impone al Estado en momentos en que el auge en la criminalidad es una realidad innegable. Nos sorprende, pues, que la misma mayoría que en Pueblo v. Díaz Medina, res. el 27 de agosto de 2009, 2009 T.S.P.R. 138, invocó el interés del Estado en combatir la criminalidad para modificar el alcance del derecho de intimidad consagrado en nuestra Constitución, hoy declina reconsiderar su

decisión, y rechaza el señalamiento de la Procuradora General de que se ha estrechado injustamente el ámbito de remedios a disposición del Ministerio Público y que ello, inevitablemente, redundará en que innumerables crímenes queden impunes.

Contrario al proceder de la mayoría, reconsideraríamos la Opinión emitida por el Tribunal en este caso y restableceríamos la norma sobre la disponibilidad del *certiorari* para revisar cuestiones de estricto derecho sin necesidad de agotar el mecanismo de una vista preliminar en alzada. Por ende, disentimos.


Federico Hernández Denton
Juez Presidente